# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA BORLAND, | CASE NO. CV-F-04-6017 LJO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 16) |
| vs. | |
| JO ANNE BARNART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Barbara Borland ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits under the Social Security Act, Title II ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a November 22, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on July 26, 2004 and her opening brief on June 27, 2005. The Commissioner filed her opposition to the appeal on August 30, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on October 5, 2001. (Administrative Record "AR" 63-65.) She alleges a disability onset of April 30, 2000

due to renal cancer, right nephrectomy, hepatitis B, diabetes, pulmonary disease, severe shortness of breath, and inability to lift or stand. (AR 76.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 46-49, 53-57.)  Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on September 24, 2003. (AR 11-18.) The Appeals Council denied review. (AR 6-9.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on January 24, 1956. (AR 23.) She completed high school. (AR 23.) Her past relevant work is as a licensed vocational nurse. (AR 23.)

### Medical History

The pertinent medical history is summarized as follows.

Claimant had gastric bypass surgery in July 2001 and thereafter suffered some renal failure and other complications. (AR 183-231.)

On December 10, 2001, Antoine Dipsia, M.D., the initial State agency reviewing physician, opined that claimant has the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of about six hours; and sit a total of about six hours in an eight-hour workday (AR 233.) Dr. Dipsia also opined that except for the 10/20 pound lifting/carrying restriction, claimant has no limitations in her ability to push and/or pull and in her ability to operate hand and/or foot controls (AR 233.)  Dr. Dipsia further opined that claimant has no postural, manipulative, visual, communicative, or environmental limitations. (AR 234-236.)

On January 22, 2002, claimant complained of chronic nausea after eating and diarrhea. (AR 251-253.) On March 14, 2002, claimant reported that she feels great other than complaints of diarrhea. (AR 247.) She was given medication to manage her diarrhea. (AR 248.)

Claimant saw her treating physician, Gustavo Galeano, M.D., on July 5, 2002 with complaints of abdominal pain. (AR 242.) He told her that if the abdominal pain gets worse, she should go to the emergency room. (Ar 232.)

An MRI of claimant cervical spine on July 2, 2002 showed mild degeneration of the C-4-5 disc with mild posterior disc bulge causing sliding of the anterior aspect of the thecal sac without

significant canal stenosis or neural foraminal narrowing. (AR 243.) The remainder of the cervical and upper thoracic discs and cords were normal. (AR 243.) On June 11, 2002, she had steroid injections into her back. (AR 244.) X-rays of the lumbar spine and cervical spine on June 11, 2002 were normal. (AR 245.)

Claimant complained of low back pain. (See e.g., AR 278, 282) Claimant complained of shortness of breath. (See e.g., AR 297, 295, 293, 290, 288, 300.)

On September 25, 2002, state agency physician, S. Fountain, M.D, completed the Physical Residual Functional Capacity Assessment form. (AR 361-368.) Dr. Fountain opined, on reconsideration, that claimant has the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of about six hours; and sit a total of about six hours in an eight-hour workday and added occasional postural limitations for climbing, balancing, stooping, kneeling, crouching, and crawling; and an environmental restriction that claimant should avoid concentrated exposure to fumes, odors, etc. (AR 361-368).

On October 18, 2002, claimant appeared for comprehensive psychiatric evaluation by Charles House, Ph.D. (AR 369.) Claimant reported pain, irritable bowel syndrome, diarrhea, numbness. (AR 369.) Upon examination, Dr. House found intact cognitive functioning with no evidence of an impairment in concentration, attention or memory. (AR 373.) Upon examination, Dr. House found good insight and ability to maintain good concentration, persistence and pace. (AR 373.) Dr. House also found claimant had a depressive disorders and assessed a GAF of 55. (AR 374.) Dr. House functionally assessed claimant as able to perform simple and repetitive tasks, perform detailed and complex tasks, capable of interacting in an acceptable way with coworkers and the general public, and ability to maintain regular attendance. (AR 375.)

On November 6, 2002, I. Lyons, M.D. the State agency reviewing psychiatrist on reconsideration, opined that claimant was not significantly limited in terms of her mental residual functional capacity in any respect, and that claimant's functional mental limitations are "100% benign" (AR 388, 390-391) (see AR 45, 376-396).

On May 23, 2003, claimant's treating physician, Dr. Galeano, completed a medical assessment of ability to do work related activities form. (AR 416-419.) Dr. Galeano diagnosed

1  "back pain/arthritis" and opined that claimant was not capable of performing even sedentary work.
2  (AR 418-419.)  Dr. Galeano assessed claimant's functional physical limitations as follows: lifting
3  and/or carrying up to 5 pounds; standing and/or walking a total of ½ hour in an 8- hour workday;
4  sitting a total of ½ hour in an 8- hour workday; no climbing, balancing, stooping, crouching,
5  kneeling, crawling, or bending. (AR 416-417.)  Dr. Galeano assessed impairments in reaching;
6  handling; feeling; pushing/pulling; seeing; hearing; speaking; and fingering (which includes bilateral
7  limitations in simple grasping, firm grasping, and fine manipulation), but did not identify the degree
8  of limitation.  (AR 417-418.)  Dr. Galeano assessed that claimant's impairments cause
9  environmental restrictions with respect to: height; moving machinery; extreme temperatures;
10 chemicals; dust; noise; fumes; humidity; vibration; and other unspecified environmental limitations,
11 but did not identify the degree of limitation.  (AR 417-418.)

## Hearing Testimony

13       Claimant testified that she was a nurse in a jail facility for 11 years. (AR 24.)  Before that
14 she was a nurse in a laboratory for 10 years.  (AR 25.)  She testified that she has a lung disease which
15 causes shortness of breath, constant infections and pain in her back and neck.  (AR 25-26.)  She
16 testified she had kidney cancer and her right kidney was removed.  (AR 27.)  She was morbidly
17 obese and had a duodenal switch which resulted in 140 pound loss in 2 years.  (AR 27.)  A side
18 effect is that she had diarrhea, gas and abdominal pain.  (AR 28.)  She has been treated for
19 depression.  (AR 28.)  She has trouble sleeping and wakes with pain.  (AR 30.)  She sleeps four
20 hours at a time and takes 2 naps during the day from 20 minutes to 2 hours.  (AR 31.)  She can take
21 care of her own personal hygiene. (AR 31.)  She can do light vacuuming, the dishes, cooking, and
22 laundry.  (AR 33-34.)  She can sit for an hour and a half and up to two hours with adjusting her
23 position.  (AR 35-36.)  She can stand for 20 minutes to a half an hour, walk a city block.  (AR 36.)
24 She has trouble going up and down steps.  (AR 37.)  She cannot crawl, kneel, stoop, or climb a
25 ladder.  (AR 35-37.)  She can twist , bend slightly, push and pull, and can lift and carry about 5
26 pounds, but not often. (AR 38-39.)  She can reach overhead.  (AR 39.)  She relieves her pain by
27 sleep and rest.  (AR 39.)  She has been hospitalized with pneumonia.  (AR 40.)
28 /////

**ALJ Findings**

In his September 24, 2003 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 14.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 17-18):

1. The claimant met the disability insured status requirements of the Act on April 30, 2000, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since April 30, 2000.

3. The medical evidence establishes that the claimant has severe diarrhea, stomach pain, obesity, diabetes mellitus, status post neuroma and lung disease, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The claimant's back and neck pain are not severe. She does not have a severe mental impairment.

4. The claimant's testimony is not substantially credible for the reasons stated in the body of this decision.

5. The claimant has the residual functional capacity to perform work-related activities except for work involving frequently lifting more than 10 pounds and occasionally lifting more than 20 pounds. 20 CFR 404.1545.

6. The claimant's past relevant work as hospital nurse did not require the performance of work-related activities precluded by the above limitations(s). 20 CFR 404.1565.

7. The claimant's impairments do not prevent the claimant from performing her past relevant work.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. 20 CFR 404.1520(e).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when

the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) improperly reviewed the evidence at step 2 and 5, (2) The ALJ improperly reviewed claimant's testimony, (3) did not give proper weight to the treating physicians' opinions, (4) improperly developed the mental health record, and (5) improperly determined that claimant can perform her past relevant work.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any

point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes

---

[1]  *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]  If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985).

[3]  At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4]  At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of "diarrhea, stomach pain, obesity, diabetes mellitus, status post neuroma and lung disease." (AR 17.) He found that claimant back and neck pain were not severe and her mental impairment was not severe. (AR 17.)

The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

Here, claimant argues that the ALJ misstates the record because claimant in fact has a severe systemic disease which causes significant functional impairment. (Opening brief p.3.)

The ALJ accepted the impairments as noted above as severe, but did not find that these impairments precluded her from all work. As to the other impairments which the ALJ found were not severe, there is substantial evidence in the record to support the ALJ finding. As the ALJ noted:

> "even though the claimant has complained of neck and back pain, there is no evidence of significant degenerative lumbar spinal pathology, she had not required prescription musculoskeletal pain medications, she does not use assistive devises to ambulate, she has not been advised to undergo surgery, she has received vary scant medical care for this problem and on three visits to her treating physician in 2003 did not even mention having either neck or back

pain." (AR 16.)

The medical evidence, here, did not establish the existence of a severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of the finding of nondisability. Indeed, the ALJ meticulously analyzed the objective medical evidence. (AR 15-17.) In regards to stomach pain, the ALJ noted:

> "The record shows that while the complainant has complained of stomach pain and nausea possibly secondary to a history of renal cell carcinoma followed by status post 1991 nephrectomy, subsequent biopsy of retroperitoneal mass was negative for recurrent metastatic disease." (AR 15) (evidence citations omitted)

He noted that the abdominal exams and physical exams were negative. He stated: "in fact, the only positive finding consisted of a stone in her solitary kidney which precipitated surgical stent placement of the left urethra in August 2001, followed by uneventful dissolution of the stone.

The ALJ found that her claims of chronic diarrhea was contradicted by treatment notes: "chart notes other show that she only had on again/off again diarrhea which was medication controlled in December 2001" and received "scant" medical care. (AR 15-16) (evidence citations omitted.)

For the claimants' diabetes mellitus, the ALJ said "this impairment has not resulted in peripheral neuropathy, retinopathy or end organ damage," and was noted to be under "good control." (AR 16) (evidence citations omitted.) The right foot discomfort due to neuroma was "resolved following excision surgery" and she reported doing well. (AR 16) (evidence citations omitted.)

As to claims of shortness of breath, chest exams were normal, pulmary function studies were below the listings levels, chest x-rays were negative and inhalers were effective in controlling her condition. (AR 16.)

The final complaint the ALJ addressed was claimant claim of neck and back pain:

> "Finally even thought the claimant has complained of neck and back pain, there is no evidence of significant degenerative lumbar spinal pathology, she has not required prescription musculoskeletal pain medications, she does not use assistive devices to ambulate, she has not been advised to undergo surgery, she has received very scant medical care for this problem and on three visits to her treating physician in 2003 did not even mention having either neck or back pain. Similarly, x-rays of the cervical and lumbar spines were negative in June 2002 and MRI scans of the cervical spine in July 2002 were

1  merely slightly abnormal." (AR 169) (evidence citations omitted.)

2  Thus, there is substantial evidence in the record to support the finding that the impairments were not
3  severe.

4  As to the impairments the ALJ found to be severe, he continued the sequential analysis. He
5  found at step 3 that the impairments or combination of impairments do not meet the listings.

### Claimant's Testimony

7  Claimant argues that the ALJ only discussed claimant's testimony in "4 lines" in the decision
8  and failed to review all seven criteria as stated in SSR 96-7p.

9  A claimant's credibility generally becomes important at the stage where the ALJ is assessing
10 residual functional capacity, because the claimant's subjective pain statements may tell of greater
11 limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan*
12 *v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's
13 statements regarding her limitations merely because they are not supported by objective evidence.
14 *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony
15 regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary
16 techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent
17 statements concerning the symptoms, and other testimony by the claimant that appears less than
18 candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed
19 course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th
20 Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to
21 reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ
22 "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human*
23 *Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for
24 rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

25 Here, the ALJ did not entirely reject her claims of subjective pain. He found her testimony
26 "not substantially credible" at least to the extent she claimed she could not perform light work.

27 In arriving at this conclusion, the ALJ reviewed the medical evidence, as summarized above,
28 found that the majority of her complaints were not substantiated by the objective medical evidence.

While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

> The ALJ also noted the scope of claimant's activities of daily living:
>
>> "Other evidence which is probative on the issue of credibility consists of the claimant's varied activities of daily living which include caring for her dogs, performing light cleaning and gardening, preparing simple meals, maintaining her own appearance, reading, and driving. (AR 16.)

*See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant next argues that the ALJ failed to consider all seven criteria from SSR 96-7p.

Claimant has not cited to any authority, aside from SSR 96-7p, for the proposition that the ALJ must consider *all* of the 96-7p factors. To the contrary, the Ninth Circuit has upheld ALJ's findings on less than an evaluation of all of the SSR 96-7p listed factors. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited claimant's "lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995) (upholding adverse credibility finding where ALJ identified treating physician's statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's initial application, no medication side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding

adverse credibility finding on claimant's inconsistent testimony with that of treating physician's notes, minimal conservative treatment for alleged incapacitating pain).

Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much of it was misstated." (Opening brief, p.5:8-10.)

Claimant's brief fails to develop these points and the Court will not speculate on them. When an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the findings are supported by substantial evidence, a court may not second guess the decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Claimant argues that the ALJ did not mention the documentary representations from plaintiff and her husband.

The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him. *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and probative evidence has been rejected. *Id.* An example of significant and probative evidence is uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence and lay testimony to be neither significant nor probative. *Id.*

Here, the ALJ considered claimant's medical records, reviewing and consulting records, and her testimony. The record supports a partial discrediting of claimant's testimony. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. Thus, there is substantial evidence in the record to support the ALJ's partial rejection of plaintiff's subjective complaints.

**Consideration of Dr. Hall's and Dr. Galeano's Opinions**

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967.

Here, the ALJ found claimant capable of light work.

Claimant argues that the ALJ did not accurately consider Dr. Hall's and Dr. Galeano's opinions.[5]

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is generally to be afforded great weight in disability cases because he or she ". . . is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d at 1230; *see also* 20 C.F.R. §§ 404.1527(d) and 416.927(d). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989).

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> "The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing."

*Rodriquez*, 876 F.2d at 762. This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *but see Allen v. Heckler*, 749 F.2d 577, 579-80 (9th Cir.1984) (articulating a narrow exception; where there is a conflict between the findings of the treating and non-treating physicians, and the non-treating physician's opinion is based on a thorough examination and objective clinical tests, findings by the ALJ that the plaintiff is not disabled will be considered supported by substantial evidence).

A statement by a physician indicating a claimant is "disabled" does not mean that the

---

[5] On April 23, 1999, Dr. Hall gave claimant disability until May 30, 1999 due to her diabetes and chronic restrictive lung disease which were not controlled. (AR 182.) On July 16, 1999, Dr. Hall opined that claimant could return to work but should not lift over 10 pounds. (AR 166.)

Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. §416.928. Claimant bears the burden of proving that he is disabled by presentation of "complete and detailed objective medical reports of h[is] condition from [a] licensed medical professional." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing 20 C.F.R. 404.1512(a)-(b), 404.1513(d)).

The ALJ stated specific and legitimate reasons for rejecting the treating opinion of Dr. Galeano's opinion. First, the ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 15-16.) The ALJ reviewed all of the objective medical evidence in the record., including the records of Dr. Galeano, hospital records, x-rays, MRIs and other reports. (AR 15-16.) He noted the claimant's repeated complaints and treatment history. The ALJ reviewed and summarized claimant's medication history.

After this comprehensive review of the medical evidence, the ALJ turned to the specific limitations imposed by Dr. Galeano. (AR 16.)

> "The record also contains a medical assessment of ability to do physical activities from treating physician, Dr. Gustavo Galeano, M.D., dated May 23, 2003, which held that the claimant back pain precluded her from performing prolonged sitting, standing, walking and lifting more than 5 pounds." (AR 16.)

The ALJ gave six reasons for not giving weight to the opinion:

> "(1) it is at odds with the assessments from the two nonexamining state agency physicians. (2) it is not corroborated by any objective clinical findings. (3) it appears to have been based upon the claimants self-serving subjective statement. (4) the doctor's sole diagnosis of back pain is refuted by x rays of the lumbar spine which were entirely negative. (5) the doctor did not recommend further medical care, surgery or any other form of treatment. (6) the claimant has not require regular medical care for back pain." (AR 16.)

The ALJ went through a careful analysis and summary of the medical record before providing the list of reasons for rejecting the physician's opinion. (AR 15-17.) For instance, claimant saw Dr. Galeano for six routine office visits between July 5, 2002 and May 29, 2003 (AR 427-435): July 5, 2002, abdominal bloating (AR 434); March 20, 2003, cat bite (AR 431); May 9, 2003, bronchitis, coughing, and urticaria (AR 429); and May 23, 2003, bronchitis and coughing (AR 428). Treatment notes for November 4, 2002 and November 12, 2002 record complaints of back pain but Dr. Galeano's notes do not reveal objective clinical findings. Dr. Galeano referred claimant to Bruce

1  Gesson, M.D. who ordered x-rays and an MRI. (AR 245.) The x-ray findings showed no
2  abnormality. The MRI was similarly showed only mild degeneration. (AR 243.) Dr. Gesson did not
3  administer any treatment and Dr. Galeano scheduled claimant for routine visits and did not prescribe
4  treatment.

5        The ALJ rejected Dr. Galeano's finding that claimant is "permanently disabled" as an
6  opinion reserved to the Commissioner and because the criteria by which Dr. Galeano assessed
7  permanent disability was not set forth. (AR 18.) "[T]he opinion of the treating physician is not
8  necessarily conclusive as to either the physical condition or the ultimate issue of disability.' *Morgan*
9  *v. Comm'r of the Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999). The ALJ set forth specific
10 and legitimate reasons to reject Dr. Galeano's assessment in full and provided a comprehensive,
11 detailed summary of the facts and conflicting clinical evidence. See 20 C.F.R. § 404.1527(e)(1)
12 (opinions on issues reserved for the Commissioner). The ALJ was not required to give full weight to
13 this part of Dr. Galeano's opinion. See *Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989)
14 (ALJ not required to adopt all of a physician's findings in order to find his opinion contained
15 substantial evidence).

16       Claimant argues that the ALJ ignored the opinion of Dr. Hall. (Opening brief at 6.)

17       As the Commissioner accurately notes in her Opposition, Dr. Hall's opinion pre-dates the
18 date of onset of disability. (AR 182.) Dr. Hall's opinion was issued on April 23, 1999 and opined
19 for a disability period of April 9, 1999 to May 30, 1999. Claimant claims disability onset of April
20 30, 2000. (AR 76.) The temporary period of disability assigned by Dr. Hall does not cross into the
21 alleged disability period. Therefore, it was not error for the ALJ to ignore Dr. Hall's opinion.

## Consideration of Claimant's Mental Impairment

23       Claimant further argues that the ALJ should have developed the record as to her mental
24 impairment. She argues that Dr. House assigned a GAF of 55 which is consistent with "considerate
25 moderate limitations." (Opening brief at 7.)

26       Although the claimant bears the burden of proof where the evidence in the record is
27 equivocal, the ALJ has a duty to assist in developing the record. *Armstrong v. Commissioner of*
28 *Social Security*, 160 F.3d 587, 589-90 (9th Cir.1998); see also *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct.

2080, 2084 (2000); 20 C.F.R. § 404.1512(a) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence"); *id.* §§ 404.1512(d)-(f) (detailing the ALJ's duties to develop a claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from claimant's medical sources contain ambiguities or are otherwise "inadequate for us to determine whether you are disabled;" and to order a consultative examination if unable to seek clarification from medical sources or if "the information we need is not readily available from the records of your medical treatment source"). If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

The ALJ was not required to further develop the record because Dr. House's opinion did not require clarification. See 20 C.F.R. § 404.1512(e)(1). The medical records were not ambiguous or otherwise inadequate. Dr. House conducted a comprehensive psychiatric evaluation. Dr. House did not assess functional limitations which would preclude claimant for all work activity. Indeed, upon examination, Dr. House found good insight and ability to maintain good concentration, persistence and pace. (AR 373.) Dr. House functionally assessed claimant as able to perform simple and repetitive tasks, perform detailed and complex tasks, capable of interacting in an acceptable way with coworkers and the general public, and ability to maintain regular attendance. (AR 375.) The ALJ was not required to further develop the mental health record.

### Past Relevant Work

Claimant argues that the ALJ improperly determined that claimant could perform her past relevant work.

At step four, the ALJ determines whether the impairments preclude claimant from performing his past relevant work. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.

SSR 82-62; *Pinto v. Massanari*, *supra*, 249 F.3d 840, 844.

To be capable of performing her past relevant work, the claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62 (emphasis added).

The ALJ analyzed the claimant's past relevant work and stated:

> "The claimant's past relevant work experience as a hospital nurse was described by the claimant as involving sitting for two hours, standing and walking for four hours and lifting not more than ten pounds. Because the claimant's prior work as a hospital nurse did not involve the performance of work tasks that are in excess of her residual functional capacity, it is concluded that she is fully capable of performing her past relevant work." (AR 17.)

The ALJ determined that claimant could perform her past relevant work as <u>actually</u> performed. The ALJ is not required to also establish that claimant is unable to perform her past relevant work as performed in the national economy. *See, generally*, *Pinto v. Massanari*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations.") Since the ALJ found that the claimant could perform her past relevant work as it was actually performed, he did not need to compare it to the work as defined in the <u>Dictionary of Occupational Titles (DOT)</u>. The Court does not error in Step Four.

### **Claimant is Not Entitled to A Closed Period of Consideration**

Claimant argues that, having found claimant functionally capable of work, the ALJ should instead have considered a closed period of time for her disability - from the date of alleged onset to the date of her rehabilitation from the second surgery. (Opening Brief p.4:7-9.) Claimant does not cite any authority for her proposition.

17

1         To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

      Claimant failed to prove that she is unable to perform her past relevant work.  There is substantial evidence in the Record that her past relevant work is light and fits the limitations imposed upon claimant.  The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents her from engaging in his previous occupation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  Claimant failed this burden.

## CONCLUSION

      The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Barbara Borland.

IT IS SO ORDERED.

**Dated:   October 26, 2005**                             /s/ Lawrence J. O'Neill
b9ed48                                                              UNITED STATES MAGISTRATE JUDGE